259 F.2d 886
 Horace INGRAM, Frank Christian, L. E. Smith, Mary Parks Law, Rufus Jenkins, Richard Lee Turner, Robert Lee Lewis, Sr., and John Hill, Jr., Appellants,
v.
UNITED STATES of America, Appellee.
 No. 17012.
 United States Court of Appeals Fifth Circuit.
 August 27, 1958.
 Rehearing Denied September 23, 1958.
 Certiorari Granted December 8, 1958.
 
 See 79 S.Ct. 234.
 Wesley R. Asinof, John C. Tyler, L. D. Burns, Jr., W. Stell Huie, Atlanta, Ga., for appellants.
 E. Ralph Ivey, Asst. U. S. Atty., James W. Dorsey, U. S. Atty., Atlanta, Ga., for appellee.
 Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 Thirty-one persons were indicted for conspiring to evade and defeat the payment of the wagering taxes imposed by 26 U.S.C.A. §§ 4401 and 4411. Twenty-one of these persons were also charged with the substantive offenses of accepting wagers without paying the special tax imposed by 26 U.S.C.A. (I.R.C.1954) § 4411 in violation of 26 U.S.C.A. (I.R. C.1954) § 7203, and with engaging in the business of accepting wagers without registering as required by 26 U.S. C.A. (I.R.C.1954) § 4412 in violation of 26 U.S.C.A. (I.R.C.1954) § 7272. Two of the defendants, Horace Ingram and Rufus Jenkins, were convicted on all three counts. These and eight others were convicted on the conspiracy charge. Two of the eight were given probation and the others were sentenced for terms varying from a year and a day to three years. The two defendants who were convicted on three counts were sentenced to five years on the conspiracy charge and one year for failure to pay the tax. They were fined $25.00 for failing to register. The defendants who were sentenced to imprisonment have appealed. Ingram and Jenkins appeal from their conviction and sentence on the substantive charges as well as from their conviction and sentence on the conspiracy count. However, no error is specified and no argument is made as to the convictions on the substantive charges. We will disregard and treat as abandoned the appeal from the convictions on the second and third counts of the indictment. U.S.Ct.App. 5th Cir. Rule 24, Par. 2(b), 28 U.S.C.A.
 
 
 2
 The trial lasted nineteen days and the record exceeds thirty-three hundred pages. The evidence connected the appellants with a rather large scale lottery or numbers operation. None of the appellants had paid a wagering tax or registered as the statute required, nor had any of the others connected with the enterprise done so. The participants in such an operation have been described by the Supreme Court:
 
 
 3
 "A numbers game involves three principal functional types of individuals: (1) the `banker,' who deals in the numbers and against whom the player bets; (2) the `writer,' who, for the banker, does the actual selling of the numbers to the public, and who records on triplicate slips the numbers sold to each player and the amount of his wager; and (3) the `pick-up man,' who collects wagering slips from the writer and delivers them to the banker. If there are winnings to be distributed, the banker delivers the required amount to the writer, who in turn pays off the successful players." United States v. Calamaro, 354 U. S. 351, 77 S.Ct. 1138, 1140, 1 L. Ed.2d 1394.
 
 
 4
 The appellants, with candor concede that there is evidence tending to prove that Ingram was a banker. Of the others, the appellants say, "Some of them can be classified as no more than headquarters personnel, some as pick-up men, and as to others the evidence fails to show any particular category." The conviction of Jenkins of the charges contained in the second and third counts of the indictment indicates that he was regarded by the jury as a principal in the enterprise. As to the others, we think the appellants' statement is a fair thumbnail appraisal of the effect of the evidence. All of them, however, were identified with and active in the carrying on of the numbers game.
 
 
 5
 The pick-up men and the head-quarters personnel, if neither bankers nor writers, are not liable for the tax and are not required to register. United States v. Calamaro, supra. The appellants tell us that it is necessary, in the operation of a numbers game, that there be pick-up men and headquarters personnel as well as bankers and writers. These persons violate no Federal law in following their occupations and hence proof of the things done by them in the gambling enterprise, so the appellants urge, is not evidence of a conspiracy to evade and defeat the payment of the wagering tax.
 
 
 6
 Much of the activity of the group who took part in the operation of the venture occurred in or stemmed from Horace Ingram's Garage in Atlanta, Georgia, referred to by Government counsel as the "money headquarters" or "city headquarters" to distinguish it from the "checkup headquarters" which was out of the city. We shall not undertake to relate the parts played by each of the actors who were engaged in the lottery scheme. It is clear enough that there was a large scale gambling enterprise being conducted and that each of the appellants had a part in it. The operation of a lottery is a criminal offense under the law of Georgia. Ga.Code, §§ 26-6501, 26-6502. There was evidence that each of the appellants had violated the Georgia law. Lay v. State, 85 Ga. App. 315, 69 S.E.2d 583. In addition to the evidence which identified the appellants as being engaged, in one capacity or another, in the lottery project, there was testimony showing that motor vehicles were registered in the names of non-existing or deceased persons at fictitious addresses, that one or more of the vehicles used in the business had been repainted in a different color or colors, that cars had been "souped-up" so as to permit escape or avoid serveillance, that a truck had been fitted with a secret compartment for the transporting of lottery tickets and other gambling paraphernalia, and that roundabout routes were frequently traveled and often changed in carrying on the business of the lottery. That the evidence shows violations of the Georgia law and a concert of effort to escape detection in such violations is tacitly conceded by the appellants; but, they say, there is no evidence of any agreement or concert of action to evade and defeat the payment of the tax owing to the United States. The appellants contend that the convictions cannot stand unless it appears that they knew a tax was payable, that they knew it had not been paid, and that their activity was done with an intent to evade and defeat the payment of it.
 
 
 7
 It is a Federal offense to engage in accepting wagers without payment of the tax and registering. From the evidence the jury could have found and apparently did find that the appellants were engaged in the mutual activity of operating a lottery with a common purpose of escaping detection, prosecution and punishment. So also the jury could have found and apparently did find that the activities were carried out with the further purpose of evading and defeating the Federal Statutes requiring payment of the tax and registering. It was not necessary that the Government prove that the appellants knew of the statute. Cruz v. United States, 10 Cir., 1939, 106 F.2d 828. With a factual situation such as the evidence here discloses, it will not be presumed nor was the Government required to prove that the tax which was payable had not been paid. Conspirators are held to have intended the consequences of their acts, and by purposely engaging in a conspiracy which necessarily and directly produces a prohibited result they are, in contemplation of law, chargeable with intending that result. United States v. Patten, 226 U.S. 525, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325. "The conspiracy is the crime, and that is one, however diverse its objects." Frohwerk v. United States, 249 U.S. 204, 39 S.Ct. 249, 252, 63 L.Ed. 561; United States v. Manton, 2 Cir., 1938, 107 F.2d 834; certiorari denied, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012.
 
 
 8
 The question as to whether the conspiracy was for the purpose of evading and defeating the requirements of the Federal law was for the jury and the jury's verdict has resolved the question. It is immaterial whether there was another purpose or purposes and whether such other purposes were legal or illegal. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; Kobey v. United States, 9 Cir., 1953, 208 F.2d 583.
 
 
 9
 One other question remains for disposition. The appellants state it in these words:
 
 
 10
 "The gist of the conspiracy in this case is the agreement to violate the Wagering Tax Act. In order to fasten liability upon any person for this tax a wagering agreement must first be entered into between a bettor and a banker. The Act, therefore, necessarily contemplates more than one person be involved. However, Congress has seen fit to impose no tax liability upon any person in this enterprise other than the banker and a writer employed by him. The bettor or player, the pickup man and the other various and sundry employees of the banker or writer are all exempted, by the Act of Congress, from paying tax. In such cases as these, there can be no conviction for a conspiracy merely to enter into such an agreement unless there is also an ingredient in addition to the wagering contract, for the mere doing of the substantive act in such case must stand or fall on whether the law imposes a penalty for such substantive act. In other words a conspiracy case can not be made out against one who could receive no penalty for the substantive offense, unless an additional ingredient is also present."
 
 
 11
 In support of their contention the appellants rely upon the rule that an agreement between buyer and seller, without more, does not establish a conspiracy for an illegal sale of liquor. United States v. Katz, 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986. A like analogy is drawn from the holding that a woman could not be convicted of conspiring to violate the Mann Act, 18 U.S.C.A. § 2421 et seq., when she was the person to be transported with her consent across a state line unless some other ingredient was present. Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370. If this were a case where one who had purchased a lottery ticket was contending that he could not be convicted of being a conspirator the argument might be persuasive. It is not such a case. The charge is not that of carrying on a lottery. It is of a conspiracy to evade and defeat the payment of the wagering tax. The proof was sufficient.
 
 
 12
 Since we fail to find merit in the appeal, the judgment of the district court is
 
 
 13
 Affirmed.