355 F.Supp. 710 (1973)
William Irvin DRAKE, Plaintiff,
v.
UNITED STATES of America, Defendant and Third-Party Plaintiff,
v.
Jack W. KLEIN et al., Third-Party Defendants.
No. 72 C 40(3).
United States District Court, E. D. Missouri, E. D.
January 10, 1973.
*711 Michael J. Ebeling, St. Louis, Mo., for plaintiff and Third Party Defendant.
Daniel Bartlett, Jr., U. S. Atty., David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., for the United States.

MEMORANDUM OPINION AND ORDER
WEBSTER, District Judge.
Plaintiff William Irvin Drake instituted this action to recover amounts paid on account of taxes assessed by defendant United States of America. Jurisdiction is based upon 28 U.S.C. §§ 1340 and 1346.
On August 14, 1970, plaintiff was timely assessed the sum of $98,116.45 respecting plaintiff's wagering activities during the period October, 1965 through and including February, 1967. Plaintiff paid the sum of $19.00 against this total liability. On December 4, 1970, plaintiff was timely assessed the sum of $189,879.66 respecting plaintiff's income tax liability for the years 1965, 1966 and 1967. Plaintiff has paid the sum of $3.00 respecting these assessments. Plaintiff denies liability under the assessments and seeks to recover the $22.00 paid in protest. Defendant has counter-claimed for the $98,107.90 alleged to remain unpaid on account of the unsatisfied assessments.
Defendant, as third-party plaintiff, demands judgment against third-party defendants Jack W. Klein, Jacqueline C. Klein and Samuel O. Swofford, severally, on account of taxes assessed against their wagering activities, and entirely unpaid.

I
Defendant asserts, as a defense to Count II of the complaint, plaintiff's failure to pay his income tax assessment in full before seeking refund of the $3.00 paid in protest. Defendant's position is well taken. In tax disputes, the taxpayer has the option of resisting a proposed deficiency assessment in the United States Tax Court or of paying the full amount of the assessment and seeking refund in the United *712 States District Court. Sec. 6214 I.R.C.; Sec. 7422 I.R.C. A taxpayer may not seek relief in the District Court until he can allege that he has made a proper claim for refund which has been rejected and that the amount assessed has previously been paid. Sec. 7422 I.R.C. A court does not have jurisdiction over a refund suit where the taxpayer has not paid the entire amount of the assessment. Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). It therefore appears that this court is without jurisdiction to entertain plaintiff's claim for refund of income taxes under Count II, and Count II is hereby dismissed.

II
The assessments against Drake, Mr. and Mrs. Klein and Swofford are based upon §§ 4401 and 4411 of the Internal Revenue Code of 1954 (Title 26, U.S.C. §§ 4401 and 4411). Section 4401 imposes an excise tax on "wagers, as defined in § 4421, * * * equal to 10 per cent of the amount thereof." Section 4411 requires all persons liable for the tax under § 4401 to pay a special stamp tax of $50.00 per year, with registration with the Internal Revenue Service further required by § 4412. Section 4421 defines the term "wager" to include "any wager with respect to a sports event or a contest placed with a person engaged in the business of accepting such wagers."
Section 4401(c) designates the persons liable for the tax as follows:
"(c) [as amended by Sec. 151(a), Excise Tax Technical Changes Act of 1958, P.L. 85-859, 72 Stat. 1275] Persons Liable for Tax.Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery. Any person required to register under section 4412 who receives wagers for or on behalf of another person without having registered under section 4412 the name and place of residence of such other person shall be liable for and shall pay the tax under this subchapter on all such wagers received by him."
Sections 44.4403-1 and 44.6001-1 of the Wagering Tax Regulations require, in part, daily records of the following:
(1) The gross amount of all wagers accepted;
(2) The gross amount of each class or type of wager accepted on each separate event, contest, or other wagering medium;
(3) The gross amount of wagers accepted directly; accepted by agents; accepted as laid-off wagers;
(4) Detailed information with respect to laid-off wagers; and
(5) The gross amount of tax collected from or charged to bettors as a separate item.
Where persons liable for the tax imposed by Section 4401, fail to maintain records as required in Sections 44.4403-1 and 44.6001-1(b) of the Wagering Tax Regulations, the government is justified in estimating the volume and extent of their wagering operations. Hodoh v. United States, 153 F.Supp. 822 (N.D.Ohio, 1957); O'Neill v. United States, 198 F.Supp. 367 (E.D.N.Y., 1961); Pinder v. United States, 330 F. 2d 119 (C.A.5, 1964). The burden of proof is on the person so assessed not only to show that the amount of the assessment was wrong, but to produce convincing evidence from which a proper determination of the amount of tax due may be ascertained. Pinder v. United States, supra; Hodges v. United States, 223 F.2d 140 (C.A.5, 1955); Hamilton v. United States, 429 F.2d 427 (C.A.2, 1970).
Neither plaintiff nor any of the third-party defendants registered under the provisions of § 4412, nor did any of them maintain the detailed records required by §§ 44.4403-1 and 44.6001-1 of *713 the Wagering Tax Regulations. They contend that they were not "persons liable for [the] tax" within the meaning of § 4401(c).
The case was tried to the court. Drake testified that during the period covered by the assessments he was working for Swofford as a runner, and that Swofford was operating a "numbers" lottery. The "numbers" lottery is a gambling operation, particularly popular among members of the black communities of St. Louis and St. Louis County. The operator is generally known as a policy company. In a customary operation, managers in the local communities, acting as entrepreneurs, distribute lottery sheets and other paraphernalia supplied by the policy company through writers. The writers and managers work on a percentage of the take. The cost to the bettor is usually small ($1.00 or less per bet). Briefly summarized, the manager collects the winnings on the last lottery and prepares a record of results on "hit" sheets and "take" sheets. Because of a certain mutual distrust, the policy company exchanges the "drawings" or list of winning numbers from the next lottery at the same time it receives the material from the previous lottery from the manager. This is frequently accomplished on neutral ground between two slowly passing automobiles and is known in the industry as a "cut-loose".
Swofford corroborated Drake's testimony and admitted his operation of the wagering business. The court finds from the preponderance of the credible evidence that Drake was paid approximately $100.00 per week when he worked; that his function was to carry out the "cut-loose" in the City of St. Louis for the policy company; that he accepted no wagers and had nothing to do with the keeping of accounts or records. He had no control over the operation and paid the taxes under protest. In 1967, Drake was arrested and thereafter indicted by the Grand Jury. He pleaded guilty to one count of engaging in the business of accepting wagers as bookmakers without paying the occupational tax imposed by 26 U.S.C. § 4411, in violation of 26 U.S.C. § 7203. Swofford also pleaded guilty to accepting wagers and evading taxes due thereon in violation of 26 U.S.C. § 7201 before Judge Regan, U. S. A. v. Swofford, et al. E.D.Mo. No. 67 Cr. 102(3) (1967).
Mr. and Mrs. Klein each testified with respect to their relationship to Swofford. In late 1966, Swofford asked Klein if he could use his garage. Klein had an idea of what was going on, and this was later confirmed. Klein testified that he had no financial or proprietary interest in the operation or any control over the draw. He testified that he was not engaged in a gambling business. Mrs. Klein acknowledged that she occasionally helped Swofford run adding machine tapes on some of the packages which were later delivered to Drake. Occasionally Mr. Klein counted some money for Swofford. He testified that these activities took place on an average of three times per week. Both Mr. and Mrs. Klein pleaded guilty with Drake to the charge of engaging in the business of accepting wagers as bookmakers without paying the occupational tax imposed by 26 U.S.C. § 4411, in violation of 26 U.S.C. § 7203.
Mrs. Klein admitted that on one occasion she went to Swofford's trailer and that she frequently saw Drake at a bar which they both frequented. Both Mr. and Mrs. Klein denied receiving any compensation from Swofford, and he testified to like effect. Swofford testified that he showed his appreciation for the hospitality extended by the Kleins by taking them out to dinner from time to time and by providing other forms of entertainment for them. The frequently played cards and drank before Swofford went to work. Swofford testified that he had known Jack Klein for thirty years or more. His purpose in using the garage was to work on his forms without having to return to his trailer, which was located some distance away in Jefferson County. Swofford testified that his modus operandi was substantially as *714 follows: he would leave his home between 9:30 and 10:30 a.m. and go to the trailer, where he would print result drawings until 12:00. He usually printed his winning drawings two days in advance in case he should be incapacitated by his drinking. These sheets, printed in advance, made him very vulnerable to his customers, and he took extra precautions not to have them found. After printing the sheets, he would deliver the city drawings to Drake at one of the bars. Drake made the "cut-loose" in the city. Swofford generally made the "cut-loose" himself in the county. After that, Swofford would go to the Kleins' garage and work an average of two hours. At the Kleins he added up the top sheets or prepared for the next drawing, cutting numbers, doing paper work, etc. He testified that Drake did not know about the trailer. Swofford customarily provided morning and afternoon drawings. At the end of the day, he would review the take sheets in his home behind locked doors, making corrections. Swofford testified that Drake had access to the drawings prior to the "cut-loose" but that if anything went wrong that would be his last time. He paid his managers once a week and further testified that the manager was a free agent who could move elsewhere with his clientele.
Special Agent Richard W. Carr of the Internal Revenue Service testified that he had placed Swofford under surveillance in the Fall of 1966, and his testimony with respect to Swofford's comings and goings was consistent with the testimony of other witnesses. He testified that he seized various wagering apparatus at Swofford's trailer.
A somewhat lengthy recitation of the modus operandi of the "numbers" lottery business has been made in order to place the respective parties in their proper roles and to determine whether, under the applicable statutes, any or all of them are liable for the assessments made by the government.

A.
Third-party defendant Swofford. Swofford has acknowledged his participation, and there can be no doubt but that he was a person liable for wagering taxes imposed by § 4401 and § 4411. He ran the business. He failed to register. He failed to keep records, and he failed to pay the wagering taxes. On August 14, 1970, defendant was assessed by the Commissioner of Internal Revenue or his duly authorized agent for the taxable period October 14, 1965 to June 30, 1967 in the amount of $132.72 pursuant to § 4411.
Pursuant to § 4401, the Commissioner timely assessed Swofford for the taxable period October 14, 1965February 28, 1967 the sum of $98,070.45. Third-party defendant Swofford has failed to prove that the assessment was wrong and has failed to produce convincing evidence from which a proper determination of the amount of tax due may be ascertained. Judgment will therefore be entered in favor of third-party plaintiff and against third-party defendant Swofford in the amount of $98,203.17.

B.
Third-party defendants Jack W. Klein and Jacqueline C. Klein. These parties have each been assessed for the taxable period October 14, 1965 to June 30, 1967 the sum of $132.62 pursuant to § 4411 and for the period October 14, 1965 to February 28, 1967 and have each been assessed $97,982.15 pursuant to § 4401 for a total of $98,114.77 each party. The question presented for determination is whether either Jack W. Klein or Jacqueline C. Klein are persons liable within the meaning of § 4401(c). The government contends that by furnishing vital auditing functions and a place of operation the Kleins made themselves liable under this section. The key words of the section are: "Each person who is engaged in the business of accepting wagers" and "each person who conducts any wagering pool or lottery *715 * * *" (Emphasis supplied). A mere pick-up man or other employee who has no proprietary interest in the operation and who receives no wagers for his own account is not engaged in the business nor does he conduct a wagering pool or lottery, and is not liable for the tax. United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957); Ingram v. United States, 259 F.2d 886 (5th Cir. 1958), affirmed in part, reversed in part on other grounds 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 96; United States v. Bowen, 411 F.2d 923 (5th Cir. 1969).
The government contends that the guilty pleas by Swofford, Mr. and Mrs. Klein and Drake before Judge Regan are admissions against interest which establish that they were personally liable under § 4401(c). The court has considered such pleas for what they are worth, and has accorded them very little weight. At the time of plea, no questions were asked or answers given touching upon the factual basis for the plea.[1] The parties testified that they were advised to plead guilty by their attorney and that each of them only knew that they did not have a wagering stamp. The plea, under these circumstances, standing alone, is no evidence that any of the three had any wagers placed with them or conducted a wagering pool or lottery within the meaning of § 4401(c).
While the court does not condone the actions of the Kleins in knowingly permitting Swofford to perform certain functions of an illegal lottery in their home and in assisting him in various minor ways, the court concludes from the preponderance of the credible evidence that the Kleins were not persons liable for tax within the meaning of § 4401(c). There was no evidence of participation in the proceeds of the business or that either of the Kleins had any control or management functions. They received no compensation except such largesse as their friend Swofford saw fit to bestow from time to time in terms of entertainment outside the home. One may find the relationship between the three bizarre, but the court does not find the testimony to be so improbable as to be beyond belief. There was no evidence to the contrary. Accordingly, judgment will be entered in favor of third-party defendants Jack W. Klein and Jacqueline C. Klein and against third-party plaintiff on the third-party complaint.

C.
William Irvin Drake. Defendant claims that Drake played an indispensable role which enabled Swofford to extend his business in the city while handling the county business himself. The government stresses the trust imposed in Drake by giving him access to advance materials. For reasons previously set forth in relation to Mr. and Mrs. Klein, the court concludes that this relationship was not such as to make Drake a person liable for the tax within the meaning of § 4401(c). He was a paid runner, nothing more. He was not conducting a lottery business, but was a mere employee having no interest or participation in the proceeds of the business. Accordingly, the court concludes that plaintiff Drake is entitled to recover amounts paid by him under protest against the assessment for wagering taxes. Judgment will be entered in favor of plaintiff and against defendant in the sum of $19.00. Judgment on the counterclaim will be entered in favor of plaintiff and against defendant. Each party will bear his own costs.
This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.
So ordered.
NOTES
[1] The criminal case pre-dated McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L. Ed.2d 418 (1969).