Carter H. OGDEN, Zelma Ogden and Dorothy Ogden, Plaintiffs,

v.

UNITED STATES of America, Defendant.

E. B. OGDEN, Jr. and Nancy A. Ogden, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. W75–18(N), W75–19(R).

United States District Court, S. D. Mississippi, W. D.

Oct. 29, 1975.

John T. Green, Natchez, Miss., for plaintiffs.

Jack D. Warren, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

NIXON, District Judge.

Plaintiffs, Carter H. Ogden, Zelma Ogden and Dorothy Ogden, filed Civil Action No. W75–18(N) under 28 U.S.C. §§ 1340 and 1346 to recover income taxes paid to the Internal Revenue Service, which they allege to have been due them by virtue of deductions claimed for certain casualty losses resulting from the expropriation by the Cuban government of property belonging to them. E. B. Ogden, Jr. and Nancy A. Ogden filed Civil Action No. W75–19(R) seeking similar relief by virtue of losses which they also sustained by expropriation of their property by the Cuban government. With the consent of all parties these two cases were consolidated by Order of this Court filed June 2, 1975.

The cause is now before the Court on Motion of the defendant, United States, to Dismiss for Lack of Jurisdiction.

### FINDINGS OF FACT

At all times pertinent, all plaintiffs in these consolidated actions were citizens of the United States, although at various periods during the time under consideration certain of the plaintiffs resided outside of the United States.

During portions of 1958 and 1959 each of the plaintiffs in these cases owned certain tangible property located in Cuba, consisting of household belongings, automobiles, etc. All of this property held in Cuba was acquired prior to December 31, 1958 and was also held in Cuba on one or more days during the period December 31, 1958 to May 16, 1959.

At some time prior to January 1, 1964, all of the above property was expropriated by the Cuban government. On June 30, 1971, each of the plaintiffs filed a claim for refund of income taxes for the appropriate years, amending their income tax returns for those years to claim losses by expropriation of the Cuban government. After an initial audit, the Examining Officer of the Internal Revenue Service, Natchez, Mississippi, recommended refunds. However, the District Director of Internal Revenue, Jackson, Mississippi, rejected plaintiffs' claim for refunds, and his rejection was upheld by the Appellate Division of the Regional Commissioner's Office, Internal Revenue Service, Birmingham, Alabama. Plaintiffs then filed the instant actions.

### CONCLUSIONS OF LAW

Section 165 of the Internal Revenue Code (IRC), 26 U.S.C. § 165, governs the deductibility of losses. As a general rule, any loss sustained during a taxable year and not compensated by insurance or otherwise is deductible. (IRC Section 165(a)).

Losses deductible by individuals, however, are limited by subsection (c) of Section 165:

(c) *Limitation on Losses of Individuals.* —In the case of an individual, the deduction under subsection (a) shall be limited to

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. . . .

The Internal Revenue Code was amended, effective February 26, 1964, by Section 238 of the Revenue Act of 1964, P.L. 88–272, 78 Stat. 19, adding to Section 165 a new subsection (i):

(i) *Certain Property Confiscated by Cuba.* For purposes of this Chapter, any loss of tangible property, if such loss arises from expropriation, intervention, seizure, or similar taking by the government of Cuba, any political subdivision thereof, or any agency or instrumentality of the foregoing, shall be treated as a loss from a casualty within the meaning of subsection (c)(3).

Subsection (i) was amended, effective June 30, 1964, by Section 3(a) of the Excise-Tax Rate Extension Act of 1964, P.L. 88–348, 78 Stat. 237, to read, in pertinent part:

(i) *Certain property confiscated by the Government of Cuba.*

(1) *Treatment as subsection (c)(3) Loss.*

For purposes of this chapter, in the case of an individual who was a citizen of the United States, or a resident alien, on December 31, 1958, any loss of property which—

(A) was sustained by reason of the expropriation, intervention, seizure, or similar taking of the property, before January 1, 1964, by the government of Cuba, any political subdivision thereof, or any agency or instrumentality of the foregoing, and

(B) was not a loss described in paragraph (1) or (2) of subsection (c),

Shall be treated as a loss to which paragraph (3) of subsection (c) applies.

In the case of tangible property, the preceding sentence shall not apply unless the property was held by the taxpayer, and was located in Cuba, on December 31, 1958.

. . . . .

(3) *Refunds or Credits.*

Notwithstanding any law or rule of law, refund or credit of any overpayment attributable to the application of paragraph (1) may be made or allowed if claim therefor is filed before January 1, 1965. No interest shall be allowed with respect to any such refund or credit for any period prior to February 26, 1964.

It is undisputed, and plaintiffs state in their complaint, that they filed their claims for refund herein on June 30, 1971. They do not contend that they filed a claim for refund before January 1, 1965, as provided for in subsection (i)(3) quoted above.

Subsection (i) was further amended, effective January 12, 1971, by the Act of January 12, 1971, P.L. 91–677, 84 Stat. 2061. Subsection (a) of this Act amended Section 165(i) of the Internal Revenue Code to permit for the first time deduction of losses sustained by reason of confiscation of property by the government of Cuba (1) connected with a transaction entered into for profit, though not connected with a trade or business, or (2) held "on one or more days in the period beginning on December 31, 1958 and ending on May 16, 1959." The 1971 amendment also deleted Section 165(i)(3), quoted above.

Subsection (b)(2) of the 1971 amendment provides, "Notwithstanding any law or rule of law, refund or credit of any overpayment *attributable to the amendments made by subsection (a)* may be made or allowed if claim therefor is filed after the date of the enactment of this Act and before July 1, 1971." (Emphasis added)

Plaintiffs admit that they could have filed claims for refunds prior to January 1, 1965, since their expropriated property was taken by the government of Cuba before January 1, 1964, was not connected with a

trade or business, or a transaction entered into for profit though not connected with a trade or business, and was held and located in Cuba on December 31, 1958. They assert, however, that since their property was held in Cuba "on one or more days in the period beginning on December 31, 1958 and ending on May 16, 1969," as well as "on December 31, 1958," their refunds are "attributable to the amendments made by subsection (a)" of the 1971 amendment and should be allowed, since they were filed before July 1, 1971.

In urging that the Court find their refunds to be "attributable to the 1971 amendments", plaintiffs seek to twist the meaning of the phrase "attributable to" beyond its normal meaning, and place a construction thereon which the Court believes could not have been intended by the Congress. Webster's Third New International Dictionary defines one thing to be attributed to another if it is "caused or brought about by" that other thing. This is the normal meaning of the phrase and the meaning which Congress clearly intended to give to the phrase in the 1971 amendments. Plaintiffs' claims are not "attributable to the amendments made by subsection (a)" of the 1971 amendments, but are attributable to the June 30, 1964 amendment to subsection (i), which "caused or brought about" plaintiffs' right to a refund. By failing to file their claims for refund before January 1, 1965, plaintiffs lost their right to do so and are not entitled to file a claim within the time permitted by the 1971 amendment.

Because the plaintiffs failed to file a claim for refund before January 1, 1965, this Court lacks jurisdiction of this action. In this connection Section 7422(a) of the Internal Revenue Code (26 U.S.C. § 7422(a)) provides:

(a) *No suit prior to filing claim for refund.*

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or

any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

Since plaintiffs failed to file their claims for refunds in a timely manner, this Court has no jurisdiction of this action, and it must be dismissed. *Drake v. United States,* 355 F.Supp. 710 (E.D.Mo.1973); *Hempt Bros., Inc. v. United States,* 354 F.Supp. 1172 (M.D.Pa.1973), *aff'd,* 490 F.2d 1172 (3rd Cir.), *cert. den.,* 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974); *Yannicelli v. Nash,* 354 F.Supp. 143 (D.N.J.1972).

The Court notes that a consideration of the legislative history of the 1971 amendment, while unnecessary to a decision of this matter, reveals that the language of the 1971 amendments to Section 165, as interpreted by the Court, is in complete accord with the intent of Congress in passing the amendments, as such intent is expressed in the Senate Report accompanying the bill. (S.Rep.No.91–1544, 91st Cong., 2d Sess.; U.S.Code Cong. & Admin.News 1970, p. 6083.) (Hereinafter referred to as Senate Report.) In discussing the reasons for the passage of the 1971 amendments, the Senate Finance Committee first points out that it is "anomalous" that deductions are permitted for expropriation losses of business and personal-use property but not for investment property. The Committee then stated the following:

"The Committee is also concerned with the situation of a taxpayer who acquired property after December 31, 1958, but before the Cuban government initiated its widespread policy of expropriation. . . . ."

(Senate Report, p. 2; U.S.Code Cong. & Admin.News 1970, p. 6085)

In its explanation of the bill, the Committee says:

"The bill also provides that, notwithstanding any law or rule of law, refund or credit of any overpayment attributable to the amendments made by the bill, may be made or allowed if a claim for refund or credit is filed after the date of enactment of the bill and before January 1, 1971. (sic) This provision permits a taxpayer to file a claim for refund or credit for otherwise closed years (1) with respect to expropriated investment property, and (2) with respect to personal-use property *acquired and held* in Cuba after December 31, 1958 and on or before May 16, 1959, since casualty loss treatment is not available for expropriations of such property under present law. . . . ." (emphasis added)

(Senate Report, pp. 3–4; U.S.Code Cong. & Admin.News 1970, p. 6086)

The Court notes that plaintiffs have filed a Motion to Strike this legislative history which was offered as evidence by the defendant, United States. Since the Court has found it unnecessary to consider this legislative history in deciding the issues presented by the defendant's Motion to Dismiss, and since it has been quoted herein merely for the purpose of illustrating that contrary to the assertion of plaintiffs, there is no difference between the meaning of the language of the 1971 amendments and the intent of Congress in passing these amendments, plaintiffs' Motion to Strike is rendered moot and the Court finds it unnecessary to rule thereon.

Having no jurisdiction of the causes of action presented by the consolidated cases under consideration, the Court finds that it must dismiss them. An order conforming with the above Findings of Fact and Conclusions of Law, approved as to form by attorneys for all parties, shall be presented to this Court within the time and manner prescribed by the rules hereof.