# Attribution of Outside Earned Income Under the Ethics in Government Act

The Federal Election Commission rule that allows federal employees to defer receipt of income from honoraria, so as to avoid the annual ceiling of $25,000 imposed by 2 U S.C. § 441i, does not apply to the provision in the Ethics in Government Act of 1978, which limits outside earned income for presidential appointees to 15 percent of their salary. For purposes of determining whether this 15 percent limit has been met, income will be attributed to the year in which the services relating to it were performed.

January 28, 1982

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This responds to your letter concerning Advisory Opinion 1981–10 approved by the Federal Election Commission (FEC) on April 9, 1981. You have asked for our opinion as to the effect of that opinion on the 15 percent limit on outside earned income imposed by the Ethics in Government Act of 1978. 5 U.S.C. App. § 210 (1982). For the reasons set forth below, we conclude that the opinion of the Federal Election Commission does not affect the interpretation of the limit imposed by the Ethics in Government Act.

The opinion of the Federal Election Commission construed a provision administered by that Commission, 2 U.S.C. § 441i(a)(2). This section applies generally to government employees and prohibits them from accepting honoraria of more than $25,000 "in any calendar year." It was originally enacted in 1974 and was first interpreted to count all payments against the $25,000 limit during the year in which the related service was actually performed rather than in the year when the money was received.

Congress reversed this interpretation by legislation in 1977. It explicitly provided that "an honorarium shall be treated as accepted only in the year in which that honorarium is received." 2 U.S.C. § 441i(d). The FEC subsequently issued Advisory Opinion 1981–10, concluding that 2 U.S.C. § 441i permitted an agreement between a federal employee and the payor of an honorarium to defer payment in order not to exceed the $25,000 maximum. Payments are counted toward the maximum only in the year in which they are actually received. The opinion was written following the release of the hostages from Iran when the demand for public appearances for them was extremely great.

The opinion notes that, consistent with the legislative history of the 1977 amendment, the FEC's regulations were similar to those of the Internal Revenue

Service. The sponsor of the amendment indicated the desire to treat both provisions consistently. Thus, income is taxed when it is constructively received. *See* 26 C.F.R. 1.451–2(a). The FEC opinion made no reference to the Ethics in Government Act.

The Ethics in Government Act includes a somewhat different limit on outside earned income that applies only to those government employees who are appointed by the President with the advice and consent of the Senate. Such employees "may not have *in any calendar year* outside earned income attributable to such calendar year which is in excess of 15 percent of their salary." 5 U.S.C. App. § 210; 5 C.F.R. § 734.501 (emphasis added).

Your letter asks, in effect, whether the rule on receipt of income imposed by 2 U.S.C. § 441(d) also applies to 5 U.S.C. App. § 210. Although the matter is not free from doubt, we do not believe that it should.

We note first that the language of 5 U.S.C. App. § 210 is substantially different from that in 2 U.S.C. § 441i. An important distinction is that the 15 percent limit imposed by § 210 applies to earned income "attributable" to a particular year. As noted, Congress amended Title 2 in 1977 to change the interpretation so that income would only be charged to the statutory limit when it was actually received. When Congress enacted the Ethics in Government Act the following year, it thus had before it model language which would have enabled it to apply the same rule to the 15 percent limit. The difference in language is not in itself conclusive. Nevertheless, the fact that the two provisions, enacted within less than a year of each other, read so differently, strongly suggests that different interpretations are permissible.

The question remains as to what meaning should be given to earned income "attributable" to a given year. In its ordinary sense, one thing is attributed to another if it is "caused or brought about by" that other thing. Webster's Third New Int'l Dictionary 142 (1976); *cf. Ogden* v. *United States*, 432 F. Supp. 214, 216 (S.D. Miss., 1975). Thus, income would appear to be "attributable" to the year in which the services which "brought about" that income were performed.

The word "attributable" might be given a different, technical meaning if the legislative history or the statutory purpose dictated this result. There seems to be no persuasive reason, however, for rejecting the ordinary meaning. 2A C. Sands, Sutherland Statutory Construction § 47.28 (4th ed. 1973). The 15 percent limit was added to the Ethics in Government Act as an amendment on the floor of the House. The legislative history provides no guidance as to its interpretation. 124 Cong. Rec. 32006–08 (1978); H. R. Conf. Rep. 95–1756, 95th Cong., 2d Sess. 72 (1978). The Revenue Code provisions which deal with rules for taxable year of inclusion of income do not use the word "attributable," 26 U.S.C. § 451 *et seq*. It cannot therefore be argued that Congress, in using that word, was adopting a term of art from the tax code. Although it might make life somewhat easier for an appointee to use the same figures for both IRS and ethics purposes, one would not normally expect that the problem of income deferral would arise so often or that the problems would be so complex that consistency between ethics and IRS rules should be a major consideration.

125

Statutes on the same subject should, of course, be construed together. Sutherland at § 51.02. There is, however, no necessary inconsistency in interpreting 5 U.S.C. App. § 210 and 2 U.S.C. § 441 differently as far as postponing receipt of income is concerned. The $25,000 limit in 2 U.S.C. § 441i applies to employees of all branches, elected or appointed. The limit is large enough to permit a substantial amount of outside income which may, in fact, rival the salaries received from the government. In the Ethics in Government Act, Congress subjected a much smaller group, key presidential appointees, to a stricter rule. The dollar limit is, in practical terms, a much lower figure than that permitted by Title 2. Fifteen percent of $60,000 for example, is only $9,000. This might, of course, lead appointees to adopt devices for avoiding this limit. Although one might think that the policy of preventing avoidance should have applied equally to 2 U.S.C. § 441i, it must be recognized that the pattern of the Ethics in Government Act, in general, was to impose the strictest burdens on key Executive Branch officials. It is therefore plausible that Congress intended to prevent the use of devices for stretching out receipt of income and weakening the effect of § 210. The limit is presumably intended to prevent them from profiting from their important and visible positions and prevent them from spending a substantial amount of time on activities apart from their official duties. It is for the latter reason that the Office of Government Ethics, which is charged with administering § 210, has taken the position that under 5 U.S.C. App. § 210, income will be attributed to a given year if the personal services relating to it were performed in that year.* (This position has not been incorporated in OGE regulations or reduced to writing, but we have been informed that they have consistently advised affected persons of this view.)

For the reasons stated, we do not believe that Advisory Opinion 1981–10 of the FEC applies to 5 U.S.C. App. § 210.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

*Section 210 might have been written differently to achieve the same purpose, focusing perhaps on all outside activities rather than income. This provision is, however, only one of many conflict-of-interest restrictions that apply to the activities of such appointees. More obvious problems, such as bribery or corruption, are dealt with elsewhere.